**AFFIRM; Opinion issued October 1, 2012.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00401-CR

### EX PARTE JASON LATROY LEONARD

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-82469-2011**

## MEMORANDUM OPINION

Before Justices Bridges, Richter, and Lang
Opinion By Justice Lang

Jason Latroy Leonard is charged by indictment with aggravated sexual assault with a deadly weapon. The trial court set appellant's bail at $500,000. Appellant filed a motion seeking to have the amount reduced to less than $50,000. The trial court denied the motion. We affirm the trial court's order.

### BACKGROUND

The trial court conducted two hearings on appellant's motion to reduce his bond. At the November 21, 2011 hearing, Linda Johnson, who is appellant's mother, testified she is employed as a detention officer with the Collin County Sheriff's Office. Appellant and his family live with Johnson. Appellant's wife is employed by Wal-Mart. Before his arrest, appellant worked various jobs, including at a Pilgrim's Pride chicken plant, construction work, at Dunkin' Donuts, and for a

small environmental company. Appellant would sometimes use the income from these jobs to help with rent and expenses. Johnson testified that appellant served prison time on a prior sexual assault of child conviction and is a registered sex offender.

Johnson testified she had not contacted any bail bond companies nor had she raised any cash towards appellant's bail. She had bought a vehicle for appellant and stated she would sell that vehicle as well as some furniture to help raise money for appellant's bail. Additionally, appellant would live with her pending trial.

Detective Randy Norton with the McKinney Police Department testified that in July 2011, he was assigned to investigate the aggravated sexual assault with which appellant is charged. The complainant had a black eye, her face had some swelling, and she had minor bruising on her leg and back. She was able to describe her attacker and knew his first name was Jason. The complainant also identified the type of car her attacker drove. The complainant told Norton she had met appellant about a week previously when appellant's cousin sold her some cocaine. The night of the attack was the second time she had seen appellant.

The complainant told Norton there were children in the house at the time of the aggravated sexual assault. One of the children had come downstairs and appellant told the complainant to have the child go back upstairs. Appellant picked up a knife, walked behind the child, "put [the knife] down to the child, and said, 'I said make him go upstairs.'" A knife was recovered at the scene of the attack. Norton testified the knife was turned over to the evidence section of the department. Norton did not know whether the knife had been sent for forensic examination.

Norton had Corporal Agan, an officer who works with sex offenders, search the sex offender files for the area. Agan came up with appellant's name. Norton also determined appellant drove the type of car identified by the complainant. Based on the information the officers developed, Agan

put together a photographic lineup for the complainant to view. The complainant picked appellant's photograph from the lineup.

Officers obtained a warrant for appellant's arrest and went to his home to arrest him. As the officers approached appellant's house in their vehicle, appellant exited through the front door of the house. When appellant saw the officers, he "took off running." He entered the house through the front door, exited through the backdoor, went around the house, over a fence, and back in to the house through the garage. The officers found appellant hiding in the house inside a closet. He had covered himself with clothes.

During his flight, appellant's cell phone fell out of his pocket. The officers obtained a warrant for the phone and found photographs and videos of appellant and the complainant, including a video showing appellant sexually assaulting the complainant. On the video, appellant could be heard saying, "I'm scared to leave. I know you're gonna call the police." The complainant was heard telling appellant she would not call the police and asking him to leave.

Norton also testified that appellant had prior convictions for failure to identify as a fugitive, two assaults involving bodily injury, and unauthorized use of a motor vehicle.

Detective Beth Chaney of the Plano Police Department testified she had investigated the sexual assault of a child offense that resulted in appellant's prior conviction. The complainant in the case was a sixteen-year-old girl who was at the same party appellant attended. Appellant had the girl drive him to a park. A fifteen-year-old boy was also with them. When the boy ran to get someone to call 911 for help, appellant sexually assaulted the girl. During the sexual assault, appellant choked the girl and punched her in the face. Appellant was sentenced to ten years' imprisonment for the offense. and was released in December 2009.

In March 2011, Chaney received a report of a woman who at the emergency room who had been punched in the face and suffered a broken nose. The woman reported she had met appellant at a club and left with him. The woman reported appellant had sexually assaulted her. She told Chaney that appellant threatened to kill her or have her killed if she called the police. DNA evidence that was collected and run through the CODIS system matched appellant. The woman was not willing to press charges and there is no pending indictment against appellant for the March 2011 offense.

At the February 23, 2012 hearing, appellant's wife Dominique Leonard testified she and appellant have a seven-month-old child and they live with her mother-in-law Linda Johnson. Leonard works as a cashier at Wal-Mart and makes $700–$800 per month. She and Johnson pay the household bills. Leonard testified she is unable to raise the amount of money necessary to make the $500,000 bail. She and Leonard have not discussed how much they could raise, but Leonard believed it would be about $2,000.

Dan Rigdon testified he is the senior pastor of Abundant Life Church in Plano. He met appellant through appellant's family in January 2010. He began meeting with appellant to help him re-enter society. Appellant also did some remodeling work on the church offices in 2010. Rigdon found appellant to be a hard worker—one who was always on time and took pride in his work. Rigdon knew appellant was having financial difficulties and was frustrated because he was having difficulty staying gainfully employed. Rigdon testified that if appellant was released on bail, he would be available to be appellant's friend and would commit to meet with appellant once a week. Rigdon had not met with appellant while he was in jail.

Johnson, appellant's mother, testified she would be able to raise about $5,000 towards appellant's bail. She testified that in addition to appellant, his wife, and their baby, appellant's

thirteen-year-old son also lives with her and appellant's sixteen-year-old son lives with her off and on.

## APPLICABLE LAW

In reviewing the trial court's decision to grant or deny habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). We uphold the ruling absent an abuse of discretion. *Id.* We afford almost total deference to the trial court's determination of the historical facts that are supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *Id.* We afford the same amount of deference to the trial court's application of the law to the facts if the resolution of the ultimate questions turns on an evaluation of credibility and demeanor. *Id.* If the resolution of the ultimate questions turns on an application of legal standards, we review the determination de novo. *Id.*

It is within the trial court's discretion to determine the proper amount of bail. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2005). In determining the amount of bail to set, the court is guided by the following rules: (1) the bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with; (2) the power to require bail is not to be so used as to make it an instrument of oppression; (3) the nature of the offense and the circumstances under which it was committed are to be considered; (4) the ability to make bail is to be considered, and proof may be taken upon this point; and (5) the future safety of a victim of the alleged offense and the community may be considered. *Id.*; *see Ex parte Welch*, 729 S.W.2d 306, 309 (Tex. App.—Dallas 1987, no pet.). Relevant facts to be considered in determining the amount of bond include the accused's work record, family and community ties, length of residency, previous criminal record,

and conformity with the conditions of any previous bond, any outstanding bonds, aggravating circumstances involved in the charged offense, and the range of punishment for the charged offense. *See Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. [Panel Op.] 1981).

The person seeking the reduction has the burden of demonstrating the bail is excessive. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980). Although the ability or inability of the accused to make bail is a factor to be considered, that factor alone does not control the amount of bail. *See Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.] 1980).

## ANALYSIS

In his sole issue, appellant contends the trial judge erred by denying the bond reduction. Appellant asserts the evidence shows he is not a continuing danger to society and that he will appear in court as "scheduled." He further appears to argue that he may only be tried for the offense with which he is charged and not based on his other crimes or bad acts. The State responds that the evidence supports the trial court's decision to deny appellant a reduction of his bond.

Appellant is charged with aggravated sexual assault with a deadly weapon, a first degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i), (ii), (2)(A)(iv) (West Supp. 2012). The punishment range for the offense is five to ninety-nine years or life imprisonment and a fine of up to $10,000. *See* TEX. PENAL CODE ANN. §§ 12.32, 22.021(e) (West 2011 & Supp. 2012). The State also filed its notice of intent to seek enhanced punishment based on appellant's prior conviction for sexual assault of a child. If appellant is convicted of the charged aggravated sexual assault and the prior sexual assault conviction is found true, appellant faces an automatic sentence of life imprisonment. *See* TEX. PENAL CODE ANN. § 12.42(c)(2)(A)(i), (B)(ii) (West Supp. 2012).

The evidence showed appellant was released from prison on the prior sexual assault of a child conviction in December 2009. The complainant in that case was a sixteen-year-old girl whom appellant choked in the course of the sexual assault. In addition to the sexual assault of a child conviction, there was evidence appellant had prior convictions for two assaults involving bodily injury, failure to identify as a fugitive, and unauthorized use of a motor vehicle. Additionally, there was testimony that appellant was tied to another sexual assault which occurred in March 2011, approximately four months before the charged offense. The woman who reported the March 2011 sexual assault suffered a broken nose and told Chaney appellant had threatened her with death if she reported him to the police. See Ex parte Rubac, 611 S.W.2d at 849–50 (evidence of criminal history factor to be considered).

At the time of the aggravated sexual assault with which appellant is now charged, appellant and his family were living with his mother. Appellant worked at various jobs, but did not have sustained employment with any one company. Appellant's mother and wife testified they were employed, but they were only able to raise $2,000 to $5,000 toward any bond amount.

There was testimony that appellant used a knife during the commission of the charged aggravated sexual assault. There was also evidence that children were in the home during the assault and appellant was reported to have made a threat with the knife towards one of the children. There was further evidence appellant used his cell phone to record himself sexually assaulting the complainant.

Based on their investigation, the officers obtained a warrant for appellant's arrest on the charged offense. When the officers went to appellant's residence to arrest him, he attempted to flee and to hide from the officers.

Appellant had the burden to show the $500,000 bail amount was excessive. Based on the record before the Court, we conclude appellant has not met his burden. Therefore, the trial court did not err by denying appellant's motion to reduce his bond. We overrule appellant's sole issue.

We affirm the trial court's order denying appellant's motion to reduce his pretrial bond.

_____
MARTIN RICHTER
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

120401F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EX PARTE JASON LATROY LEONARD

No. 05-12-00401-CR

Appeal from the 401st Judicial District Court of Collin County, Texas. (Tr.Ct.No. 401-82469-2011).
Opinion delivered by Justice Richter, Justices Bridges and Lang participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's order denying appellant's motion for a bond reduction.

Judgment entered October 1, 2012.

MARTIN RICHTER
JUSTICE